UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-81143-CIV-MARRA/JOHNSON

MORSELIFE FOUNDATION, INC.,

    Plaintiff,
vs.

MERRILL LYNCH BANK
& TRUST COMPANY, FSB,

    Defendant.
_____/

## ORDER AND OPINION GRANTING MOTION TO COMPEL

**THIS CAUSE** is before the Court upon Defendant, Merrill Lynch Bank & Trust Company, FSB Motion to Compel Arbitration and Stay Proceedings [DE 15]. The motion is fully briefed and ripe for review. The Court has carefully considered the entire Court file, oral argument of counsel, and is otherwise fully advised in the premises.

**Introduction**[1]

Plaintiff MorseLife Foundation, Inc.'s ("MorseLife" or "Plaintiff") initial complaint was filed in state court against Defendant's affiliate, Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch"). It contained two counts. Count I alleged Negligence and Count II alleged Breach of Fiduciary Duty. DE 1. Merrill Lynch

---

[1] The following background facts are taken from various documents in the Court file. To the extent they are taken from Defendant's filings, Plaintiff has not disagreed with their veracity.

removed the matter to federal court and filed a motion to compel arbitration. DE 3. MorseLife then filed an Amended Complaint that dropped Merrill Lynch as a party-defendant and named Merrill Lynch Bank & Trust Company, FSB ("MLTC" or "Defendant") as the sole defendant. DE 9. The Amended Complaint is substantially similar to the original complaint. Now MLTC moves to compel arbitration.

In late 2006, MorseLife sent out a Request for Proposals ("RFP") for the purpose of obtaining investment advise for a portion of its portfolio. Merrill Lynch, through a team of financial advisors known as the LLH Group, responded to the RFP. The LLH Group, comprised of Merrill Lynch financial advisors Jack Lansing, John Lacy and Susan Hutcheon, was ultimately selected by MorseLife. The LLH Group proposed that MorseLife retain several outside money managers through a Merrill Lynch investment program known as "Consults." These outside money managers directed the investment of some of Plaintiff's assets.

**Agreements**

The facts of this case involve two separate contracts. Plaintiff had one contract with MLTC, and another with Merrill Lynch. Each contract had an arbitration clause.

MLTC Nonprofit Agency Agreement

On or about February 1, 2007, MorseLife entered into a Nonprofit Agency Agreement ("Agency Agreement") with MLTC governing MLTC's management of a specific portion of MorseLife's Portfolio assets. The Agency Agreement set forth

2

numerous duties and responsibilities that MLTC had relative to management of MorseLife's investment portfolio.  *See* DE 15, Ex. E.  Under that Agreement, Plaintiff agreed as follows:

> You [MorseLife] agree that all controversies that may arise between you and us [MLTC] or our Affiliate, including Merrill Lynch, arising out of any investment-related transaction in accounts held under this agreement shall be determined by arbitration.  Such controversies include, but are not limited to, those involving any transaction in the accounts held under this agreement with us, or the construction, performance or breach of any agreement concerning the accounts held under this agreement between you and us ....

DE 15, Ex. E, part XIX.  Thus, in pertinent part, the Agency Agreement provides that all controversies between MorseLife and MLTC, including Merrill Lynch, "arising out of any investment-related transaction in accounts . . .or [involving] the construction, performance or breach of any agreement concerning the accounts" must be arbitrated.

According to the Amended Complaint, however, this lawsuit "does not arise from or in any way relate to" the agreement between MLTC and MorseLife.  Am. Compl. ¶ 9.  "Instead, this lawsuit arises as a result of [MLTC's] breach of its independent duty to MorseLife, which was created when [MLTC] voluntarily undertook to provide MorseLife with additional and unrelated investment advice and recommendations with respect to the remainder of MorseLife's portfolio."  *Id.*

<u>Merrill Lynch</u>

On or about July 11, 2008, approximately one and one-half years after the agreement between MorseLife and MLTC, MorseLife entered into a written contract with Merrill Lynch by which it agreed to the following:

> THAT IN ACCORDANCE WITH SECTION 17, PAGE 17,[2] OF THE [BIA FINANCIAL SERVICE AND WCMA FINANCIAL SERVICE ACCOUNT AGREEMENT AND PROGRAM DESCRIPTION BOOKLET], THE CORPORATION [MORSELIFE] IS AGREEING IN ADVANCE TO ARBITRATE ANY CONTROVERSIES THAT MAY ARISE WITH MERRILL LYNCH.

DE 15, Ex. A at 5, ¶ 7.  Thus, in pertinent part, the Merrill Lynch agreement provides that "[a]ll controversies that may arise between MorseLife and Merrill Lynch . . . shall be determined by arbitration."  This is a very broad clause and its breadth and meaning has not been challenged by Plaintiff.

<u>Analysis</u>

The Supreme Court has articulated a strong federal policy favoring arbitration agreements.  *See Moses H. Cone Mem'l Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983).  One of the purposes of the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 *et seq.*, is to "ensure judicial enforcement of privately made agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985).  As such,

---

[2] Section 17, page 17 of the incorporated Agreement and Booklet provides, in relevant part, as follows: All controversies that may arise between the Customer and Merrill Lynch, including, but not limited to, those involving any transaction or the construction, performance or breach of this or any other agreement between the Customer and Merrill Lynch, . . ., shall be determined by arbitration.  DE 15, Ex. B.

arbitration agreements must be "rigorously enforce[d]" by the courts.  *Id*. at 221.

The FAA guides the courts in enforcing arbitration agreements:  "A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Further, the FAA allows a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate" under an otherwise valid arbitration clause to seek an order from a court compelling arbitration.  9 U.S.C. § 4.

As cited above, the language of the Agency Agreement between Plaintiff and MLTC contains an arbitration provision which requires MLTC and MorseLife to arbitrate all controversies between MorseLife and MLTC, including Merrill Lynch, "arising out of any investment-related transaction in accounts . . .or [involving] the construction, performance or breach of any agreement concerning the accounts." MorseLife contends that this lawsuit does not arise out of any actions or omissions related to any accounts held, but rather, "this lawsuit solely arises pursuant to the 'undertakers doctrine' and services voluntarily rendered outside of any contracts that are connected with any Merrill Lynch related accounts."  DE 16 at 3.

In the original and Amended Complaint, Plaintiff alleges negligent advice given by John Lacy ("Lacy"), a Merrill Lynch Vice President.  The Amended Complaint alleges that "sometime after [MLTC] began managing a portion of MorseLife's

5

portfolio, [MLTC], through Lacy, and others, began providing additional and unrelated services to MorseLife, including general financial advice on investment policies and investments. . ." Am. Compl. ¶¶ 9, 11.  Plaintiff further alleges that "[i]n the hopes of expanding its relationship, [MLTC] undertook additional duties not covered by its written agreements, by expanding the services it was providing to MorseLife, including but not limited to advising MorseLife on its investment policies, strategies, asset allocation, risk tolerance, and specific investments not being managed by MLTC.  This lawsuit arises from these actions and related breaches of the standard of care."  Am. Compl. ¶ 10.  Additionally, the Amended Complaint alleges inadequate performance and/or breach of oral agreements by MLTC that concern all of Plaintiff's assets, whether they were accounts with MLTC or non-portfolio investments.  Am. Compl.¶¶ 12, 13.  Thereafter, the Amended Complaint tracks the original Complaint almost word-or-word, including allegations of investment advice-based negligence committed by Lacy.

     MLTC asserts that by dropping Merrill Lynch as the party defendant, and filing an Amended Complaint solely against MLTC, Plaintiff is engaging in a tactical ploy to try to avoid MorseLife's binding agreement to arbitrate "all controversies" with Merrill Lynch.  The Court agrees and concludes that MorseLife must arbitrate its dispute with MLTC pursuant to the "all controversies" arbitration agreement it signed with Merrill Lynch.

The allegations of Plaintiff's Amended Complaint assert that Plaintiff is suing MLTC for acts independent of MLTC's contracted obligations.  But Plaintiff acknowledged at the hearing that it is suing MLTC for the acts of Lacy and the LLH Group, who Plaintiff admits, are agents of Merrill Lynch, not MLTC.[3]

"Although arbitration is a contractual right that is generally predicated on an express decision to waive the right to trial in a judicial forum, [the Eleventh Circuit] has held that the lack of a written arbitration agreement is not an impediment to arbitration."  *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 756-57 (11th Cir. 1993).  This is because "there are certain limited exceptions, such as equitable estoppel, that allow nonsignatories to a contract to compel arbitration."  *Id*. at 757.  "[A]pplication of equitable estoppel is warranted ... when the signatory [to the contract containing the arbitration clause] raises allegations of ... substantially interdependent and concerted misconduct by both the nonsignatory and

---

[3]  If Plaintiff is suing for acts of Lacy and the LLH Group in providing negligent investment advice, and if these negligent acts arose from duties undertaken separate and apart from any contractual duties and responsibilities, then it follows that the parties responsible for the allegedly negligent conduct would be the negligent actors themselves (Lacy and the members of the LLH Group who provided the negligent advice) and the negligent actors' principal.  In this case, Plaintiff conceded that the principal of the allegedly negligent actors was Merrill Lynch, not MLTC.  Thus, it would seem that pursuant to the legal theory being advanced by Plaintiff, it does not have a claim for providing negligent investment advise against MLTC.  Rather, the proper party would be Merrill Lynch.  This analysis further buttresses the Court's conclusion that Plaintiff is attempting to circumvent its obligations under the arbitration clause in the Merrill Lynch contract.  Since, however, the present motion is to compel arbitration, and not to dismiss for failure to state a claim, the Court will leave the resolution of this issue for another day or another decision maker.

one or more of the signatories to the contract." *MS Dealer Service Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999), *quoting Boyd v. Homes of Legend, Inc.*, 981 F.Supp. 1423, 1433 (M.D. Ala. 1997).  This case squarely fits into such an exception.

Here, MorseLife, the signatory to the contract containing the arbitration clause, has brought suit against MLTC, a non-signatory to the broad arbitration clause.  But none of MorseLife's allegations against MLTC can be considered without analyzing the alleged conduct of employees of the other signatory, Merrill Lynch.  All alleged tortious acts are inextricably interwoven with the conduct of Lacy and the LLH Group, employees of Merrill Lynch.  In such a case, where one of the signatories to a contract containing an arbitration clause (MorseLife) raises allegations of substantially interdependent and concerted conduct by the other signatory (Merrill Lynch) and a nonsignatory (MLTC), the doctrine of equitable estoppel is appropriate to compel arbitration.  *See MS Dealer Serv. Corp.*, 177 F.3d at 947; *Axa Equitable Life Ins. Co. v. Infinity Fin'l Group, LLC*, 608 F. Supp. 2d 1330, 1342 (S.D. Fla. 2009) (Hurley, J.).

In *Brown v. Pacific Life Ins. Co.*, 462 F.3d 384, 399 (5th Cir. 2006), customers of the securities firm, Smith Barney, sued the firm, the Smith Barney broker ("Holt"), and two annuity companies ("GE" and "Pacific"), based on the customers' dissatisfaction with annuities that the broker sold to them.  *Brown*, 462 F.3d at 389. In holding that the trial court properly compelled arbitration under the "substantially

8

interdependent and concerted misconduct"[4] basis for equitable estoppel, the *Brown* Court explained:

> Whether and how GE and Pacific defrauded or breached duties owed to the Browns depends, in some part, upon the nature of tortious acts allegedly committed by Holt and Smith Barney - acts that would be covered by the arbitration agreement - as well as any tortious acts by GE and Pacific.  As the Browns fail to allege tortious acts by GE and Pacific that are separate and apart from Holt's, we can only conclude that the complaint asserts concerted misconduct by all parties.

*Id.* at 398-99 (internal citation and parenthetical omitted).

Likewise here, the Amended Complaint does not allege any tortious acts by MLTC that are separate and apart from the alleged acts of Merrill Lynch employees, Lacy and the members of the LLH Group.  The alleged wrongful acts of Lacy and the other Merrill Lynch agents would be covered by the Merrill Lynch arbitration agreement because it requires arbitration of "all controversies" between MorseLife and Merrill Lynch.  Accordingly, MorseLife cannot avoid the valid operation of equitable estoppel stemming from the substantially interdependent and allegedly concerted misconduct of Merrill Lynch employees by simply amending its complaint to eliminate the alleged wrongdoers' principal, Merrill Lynch, as a party.  Accordingly, the Court finds it appropriate to equitably estop MorseLife from avoiding arbitration and further finds that there are no external or legal constraints to compel arbitration of the instant lawsuit.  Therefore, it is hereby

---

[4] *MS Dealer Service Corp*, 177 F.3d at 947.

ORDERED AND ADJUDGED that Defendant, Merrill Lynch Bank & Trust Company, FSB Motion to Compel Arbitration and Stay Proceedings [DE 15] is GRANTED and the parties are ordered to arbitrate this dispute.  This case is STAYED pending the completion of the arbitration.  The clerk shall ADMINISTRATIVELY CLOSE THIS CASE.  All pending motions are denied without prejudice.  Either party may move to re-open this matter to effectuate the arbitrator's decision.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 21st day of July, 2010.

_____
KENNETH A. MARRA
United States District Judge

copies to:
all counsel of record
Magistrate Judge Johnson